UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEE D. LACY,<br><br>　　　　　　　　　　Plaintiff,<br><br>vs.<br><br><br><br>COUNTY OF SAN DIEGO, *et al.*,<br><br>　　　　　　　　　　Defendants. | CASE NO. 12-CV-624-MMA(JMA)<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART COUNTY OF SAN DIEGO'S MOTION TO DISMISS [Doc. No. 7];**<br><br>**(2) GRANTING IN PART AND DENYING IN PART BARNETT'S MOTION TO DISMISS [Doc. No. 24]; and**<br><br>**(3) GRANTING DONAHUE'S MOTION TO DISMISS [Doc. No. 11].** |

Defendants County of San Diego, Greg Barnett, and William Donahue (collectively, "Defendants") separately move to dismiss Plaintiff Lee D. Lacy's ("Plaintiff") Complaint on grounds that it fails to state a claim upon which relief can be granted.[1] Plaintiff opposes and Defendants filed replies. The Court finds the motions suitable for determination on the papers submitted and without oral argument. *See* S.D. Cal. Civ. L. R. 7.1.d.1. For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motions.

---

[1] Defendants Elizabeth Palmer, Randall Ribada, R. Patron, C. Snodgrass, M. Alvarado, and D. Morse (collectively "Defendant Deputies") do not join in Defendants' motions.

## I. BACKGROUND

On November 14, 2010, Plaintiff went to the Chula Vista courthouse to have Sheriff's deputies sign off on a "fix-it" ticket. (Compl. ¶ 13.) While Plaintiff talked to an employee at the front desk, Sheriff's Department employee Elizabeth Palmer, a non-moving defendant, came over and spoke with him. (*Id.* ¶¶ 14-18.) Palmer allegedly told Plaintiff that she would not sign off on the ticket and told him to "get the hell out of this office." (*Id.*) As Plaintiff turned to leave, Sheriff's Department employee Randall Ribada, another non-moving defendant, allegedly followed him and shoved him from behind. (*Id.* ¶¶ 21-22.) After a verbal exchange, Ribada allegedly grabbed Plaintiff's arm and, along with Sheriff's Department employee R. Patron and others, "attacked [Plaintiff] and took him to the floor." (*Id.* ¶¶ 23-27.) Plaintiff's face was slammed onto the floor and he was punched, kicked, held to the floor, and subjected to a "painful" ear hold. (*Id.* ¶¶ 34-40.) Plaintiff suffered injuries as a result of this incident. (*Id.* ¶ 41.)

Plaintiff was subsequently charged with four criminal charges, but alleges that Ribada's report of the incident was "rife with inaccuracies and false statements." (Compl. ¶¶ 47-48.) Plaintiff alleges that although he filed a complaint with Sheriff's Internal Affairs ("IA"), and Defendant William Donahue notified him that an investigation had been conducted and resulted in the "Disposition of Unfounded" (*Id.* ¶¶ 49-51), the office did not conduct an investigation. (*Id.*) Further, Plaintiff alleges that Palmer has been the subject of "multiple complaints" for excessive force, harassment, and anger management problems, but the Sheriff's Department has taken no corrective action against her. (*Id.* ¶ 52.)

On March 12, 2012, Plaintiff brought suit against the County of San Diego (the "County") under 42 U.S.C. section 1983 for failure to properly train, failure to supervise and discipline, failure to investigate citizen complaints, and *Monell* liability. [Doc. No. 1.] Further, Plaintiff alleges failure to properly train, failure to supervise and discipline, and failure to investigate citizen complaints claims against Defendant Greg Barnett, as well as failure to supervise and discipline and failure to investigate citizen complaints claims against Donahue. On April 13, 2012, the County moved to dismiss Plaintiff's claims against it, and on May 16 and June 29,

1  respectively, Donahue and Barnett moved to dismiss Plaintiff's claims against them.

## II.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Material allegations, even if doubtful in fact, are assumed to be true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Court need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotation marks omitted). In fact, the Court does not need to accept any legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*., citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

/ / /

/ / /

/ / /

/ / /

### III. DISCUSSION

**A.     Plaintiff's Claims Against the County**

      **1.     Failure to Supervise and Discipline, Failure to Investigate Citizen Complaints, and *Monell* Liability**

The Complaint alleges claims against the County for: (1) failure to supervise and discipline; (2) failure to investigate citizen complaints; and (3) *Monell* liability. (Compl. ¶¶ 75, 76, 84, 94.) The County argues that these claims are "merely a list of generic allegations and legal conclusions lacking any specific factual allegations" and should be dismissed. (County's Mot. to Dismiss at 1:25-28.)

Under section 1983, municipalities are considered "persons" and therefore may be liable for causing a constitutional deprivation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). Municipal liability may be premised on: (1) conduct pursuant to an expressly adopted official policy; (2) a longstanding practice or custom which constitutes the "standard operating procedure" of the local government entity; (3) a decision of a decision-making official who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (4) an official with final policymaking authority either delegating that authority to, or ratifying the decision of, a subordinate. *See Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008); *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004); *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 984-85 (9th Cir. 2002); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1995). After establishing one of the above methods of liability, the plaintiff must show that the challenged municipal conduct was both the cause in fact and the proximate cause of the constitutional deprivation. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008); *Trevino*, 99 F.3d at 918.

"Allegations of *Monell* liability will be sufficient for the purposes of Rule 12(b)(6) where they: (1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom

amounted to deliberate indifference, i.e. show how the alleged deficiency was obvious and that the constitutional injury was likely to occur." *Lucas v. City of Visalia*, 2010 WL 1444667 at * 4 (E.D. Cal. Apr. 12, 2010) (citing *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1149 (E.D. Cal. 2009); *Jackson v. Cnty. of San Diego*, 2009 WL 3211402 at *8 (S.D. Cal. Sept. 29, 2009).

Here, Plaintiff alleges the County created a "*de facto* policy" of lawlessness engendered by the alleged non-supervision of Defendant Deputies. (Compl. ¶¶ 103-05.) Plaintiff then identifies the shortcomings of the system, alleging that the County had prior knowledge of incidents of misconduct and civil rights violations by other deputies and the same deputies involving similar facts. (*Id.* ¶¶ 77, 78, 85, 86, 97.) Plaintiff alleges that the County systematically failed to investigate claims of misconduct or to discipline wrongdoers after citizens complained about its deputies (*Id.* ¶ 95) and that these deficiencies in the complaint process encouraged additional misconduct or excessive force violations. (*Id.* ¶ 96.) Specifically, Plaintiff alleges that he filed a complaint with IA requesting an investigation (*Id.* ¶ 49), and Donahue notified him that an investigation had been conducted resulting in the "Disposition of Unfounded." (*Id.* ¶ 50.) Plaintiff alleges that IA did not conduct an investigation (*Id.* ¶ 51), that the County covered up the misconduct (*Id.* ¶ 87), and that the County failed to investigate claims of wrongful conduct when citizens filed complaints against deputies. (*Id.* ¶ 88.)

Plaintiff further alleges that, despite this knowledge, the County failed to supervise and discipline deputies in the department to prevent, deter and punish wrongful arrests and detentions. (*Id.* ¶¶ 75, 76.) Plaintiff alleges that the County knew, or should have known, that the policy regarding supervision and discipline of deputies who violated the civil rights of the citizens was so inadequate that it was obvious that a failure to correct it would result in further incidents by its deputies. (*Id.* ¶ 79.) Finally, Plaintiff alleges that the "continued official tolerance of repeated misconduct facilitated similar unlawful actions to occur" (*Id.* ¶ 100) and that "[t]he failure to institute an adequate system to receive, investigate, and resolve citizen complaints against deputies amounts to a policy of deliberate indifference to the need for police supervision." (*Id.* ¶ 101.) As the Eastern District of California has noted, given the allegations regarding the Defendant

1  Deputies' conduct, this is a sufficient allegation of deliberate indifference.  *See Lucas*, 2010 WL
2  1444667 at *4 ("Considering how frequently police officers are called upon to utilize force, the
3  absence of policies/practices regarding monitoring the use of excessive force could amount to
4  deliberate indifference").

5  Viewing the allegations above in the light most favorable to Plaintiff, the Complaint
6  sufficiently states claims against the County.  *See Lucas*, 2010 WL 1444667 at *4; *Young*, 687 F.
7  Supp. 2d at 1149-50.  Therefore, the Court **DENIES** the County's motion to dismiss as it pertains
8  to Plaintiff's failure to supervise and discipline, failure to investigate citizen complaints, and
9  *Monell* liability claims.

10  **2.   Failure to Properly Train**

11  In addition to the claims discussed above, the Complaint alleges that the County failed to
12  properly train its employees and is thus liable under section 1983.  (Compl. ¶ 67.)  The County
13  contends that the Complaint lacks any factual allegations to support this claim and therefore
14  should be dismissed.  (*See* County's Mot. to Dismiss at 1:25-27.)

15  A municipality's failure to train its employees may create section 1983 liability where the
16  "failure to train amounts to deliberate indifference to rights of persons with whom the [employees]
17  come into contact."  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Long*, 442 F.3d at 1186;
18  *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001).  A plaintiff alleging failure to
19  properly train must show:  (1) he was deprived of a constitutional right, (2) the municipality had a
20  training policy that "amounts to deliberate indifference to the [constitutional] rights of the persons
21  with whom [its officers] are likely to come into contact; and (3) the plaintiff's constitutional injury
22  would have been avoided had the municipality properly trained those officers.  *Blankenhorn v.*
23  *City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007); *Lee*, 250 F.3d at 681.  As the Supreme Court
24  and Ninth Circuit have highlighted, "[o]nly where a municipality's failure to train its employees in
25  a relevant respect evidences a 'deliberated indifference' to the rights of its inhabitants can such a
26  shortcoming be properly thought of as a [municipal] 'policy or custom' that is actionable under
27  § 1983."  *City of Canton*, 489 U.S. at 389; *Long v. Cnty. of Honolulu*, 511 F.3d 901, 907 (9th Cir.
28

2007). "The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy." *Long*, 442 F.3d at 1186.

With regard to the County's alleged failure to adequately train its deputies, Plaintiff alleges that the County "as a matter of custom, practice and policy, failed to maintain adequate and proper training for deputy sheriffs in the department necessary to educate the officers as to the Constitutional [sic] rights of citizens and arrestees; and to prevent the unreasonable and/or unnecessary use of force on citizens." (Compl. ¶ 67.) These allegations fail to state in what way the County failed to train, what topics or subjects were not covered in training, whether the County policymakers were aware of this lack of training, or how the alleged lack of training caused any constitutional violations. Rather, they merely constitute a list of conclusory statements without factual allegations to support them. Thus, they fall short of supplying sufficient allegations to support Plaintiff's failure to train claim against the County. *Iqbal*, 556 U.S. at 678-79.

Plaintiff argues that the deficiencies noted above are "precisely the allegations he is not required to make under *Twombly*, *Erickson*, and *Iqbal*" (Opp'n, Doc. No. 8 at 5:25-26), and that he has "properly alleged that [the] County failed to train its officers with respect to unreasonable and/or unnecessary use of force on citizens and the Constitutional rights of citizens." (*Id*. at 6:1-3.) However, Plaintiff's allegations are "threadbare" conclusions that track the elements for failure to train liability. *Iqbal*, 556 U.S. at 678-79. Plaintiff must minimally identify in what way the County failed to provide adequate training, rather than just allege inadequate training. Further, although Plaintiff correctly asserts that the "foreseeability" of Defendant Deputies' actions would constitute a sufficient allegation of deliberate indifference, *see City of Canton*, 489 U.S. at 390, without identifying training practices and how those practices were deficient, the Court cannot determine whether the County's alleged conduct was deliberately indifferent. Therefore, the Court **GRANTS** the County's motion to dismiss as to Plaintiff's failure to train claim.

**B.     Plaintiff's Supervisory Liability Claims**

Plaintiff advances several claims against Barnett and Donahue on a theory of supervisory liability. The Court addresses each defendant separately.

Supervisory personnel are generally not liable under section 1983 for the actions of their subordinates on a theory of vicarious liability, and there is no respondeat superior liability for supervisors under the statute. *Hansen v. Black*, 852 F.2d 642, 645-46 (9th Cir. 1989). However, "supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision or control of his subordinates, for his acquiescence in constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." *Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th Cir. 2005) (citations omitted). The requisite causal connection may be established when an official "sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II v. Clark Cnty. Sch. Bd. of Trustees*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

**1.     Claims Against Barnett**

**a.     Failure to Supervise and Discipline and Failure to Investigate Citizen Complaints**

Plaintiff alleges claims against Barnett for: (1) failure to supervise and discipline; and (2) failure to investigate citizen complaints. (Compl. ¶¶ 75, 76, 84.) Plaintiff brings these claims against Barnett's in his individual capacity only. (Opp'n, Doc. No. 26 at 4:5.) Barnett argues these claims should be dismissed because the Complaint fails to state facts that could support a valid claim of supervisory liability. (Barnett's Mot. to Dismiss at 2:3-5.)

As with Plaintiff's claims against the County, his claims against Barnett identify a *"de facto* policy of lawlessness" promulgated by Barnett's failure to supervise, discipline, and investigate Defendant Deputies. (Compl. ¶¶ 75, 76, 88, 102-07.) In identifying the deficiencies in this policy or custom, Plaintiff alleges that Barnett, a lieutenant and supervisor of Defendant Deputies, failed to supervise and discipline these deputies. (*Id.* ¶¶ 6, 75.) Plaintiff further alleges that Barnett had knowledge of prior incidents of misconduct and civil rights violations by other deputies involving similar facts (*Id.* ¶¶ 77, 85) and that he had knowledge of prior incidents of

1  misconduct and civil rights violations by these same deputies. (*Id.* ¶¶ 78, 86.) Moreover, Plaintiff
2  alleges that Barnett knew, or should have known, that the policy regarding supervision, discipline,
3  and investigation of officers who violated the civil rights of the citizens was so inadequate that it
4  was obvious that a failure to correct it would result in further incidents by the deputies. (*Id.* ¶¶ 79,
5  89.) Finally, Plaintiff alleges that this "Constitutionally [sic] deficient" investigation and lack of
6  discipline was done with deliberate indifference to his rights and caused his damages. (*Id.* ¶¶ 80,
7  81, 82, 90, 91.)

8        As a lieutenant and the direct supervisor of the Defendant Deputies, Barnett's alleged
9  failure to supervise and discipline the deputies, as well as his alleged failure to investigate citizen
10 complaints, foreseeably could have led to the event in which Defendant Deputies used unnecessary
11 and excessive force on Plaintiff. As discussed above, given the allegations regarding Defendant
12 Deputies' conduct, this is a sufficient allegation of deliberate indifference. *See Lucas*, 2010 WL
13 1444667 at *4.

14       The Court finds Barnett's arguments that he is not alleged to be a policymaker, or that he
15 was not present at the incident, inapposite because Barnett may be individually liable for his action
16 or inaction separate from Plaintiff's *Monell* liability claims against the County. *Menotti*, 409 F.3d
17 at 1149. Further, supervisory liability does not require the direct involvement of the supervisor in
18 the particular use of force. *Preschooler II*, 479 F.3d at 1183. The Court concludes that the
19 Complaint alleges sufficient facts to support claims against Barnett for failure to supervise and
20 discipline, and failure to investigate citizen complaints. Accordingly, the Court **DENIES**
21 Barnett's motion to dismiss as it pertains to Plaintiff's failure to supervise and discipline and
22 failure to investigate claims.

23             **b.**    **Failure to Properly Train**

24       In addition to the claims discussed above, Plaintiff also alleges Barnett is liable for failing
25 to properly train the Defendant Deputies. (Compl. ¶ 67.) The Complaint alleges Barnett knew of
26 prior incidents of misconduct by the Defendant Deputies but that he failed to properly train them
27 with respect to the proper use of force. (*Id.* ¶¶ 52, 69.) Further, Plaintiff alleges he suffered
28

injuries as a result of Barnett's failure to properly train his subordinates. (*Id*. ¶ 75.) However, Plaintiff does not allege how Barnett's alleged failure to train caused the deputies to use excessive force in this case. Whether the deputies received proper training or not, Plaintiff must allege more than "lack of training" in general. The Complaint fails to address what about the alleged "lack of training" caused the deputies to act as they are alleged to have acted. Absent such allegations, the Court cannot infer that Barnett set in motion a "series of acts by others which [he knew] or reasonably should [have known]" would cause Plaintiff's alleged constitutional harms. *Preschooler II*, 470 F.3d at 1183. Therefore, Plaintiff has not sufficiently pled a failure to train claim against Barnett.

Plaintiff is correct that the Defendant Deputies' alleged use of excessive force may have been a "foreseeable result" of Barnett's failure to adequately train them, and that this may constitute deliberate indifference to his constitutional rights. (Opp'n, Doc. No. 26 at 3:19-21.) As Plaintiff's opposition highlights, however, Ninth Circuit Model jury instruction 9.3 requires causation in addition to foreseeability. Comments to Jury Instruction 9.3. Plaintiff fails to allege anything more than that Barnett was Defendant Deputies' supervisor, that there were prior complaints of misconduct against Palmer, and that Barnett failed to properly train Defendant Deputies. (Compl. ¶¶ 52, 67, 69.) This generalized, conclusory pleading lacks factual allegations to support causation. Thus, the Court **GRANTS** Barnett's motion to dismiss as it pertains to Plaintiff's failure to train claim.

### 2. Claims Against Donahue

Plaintiff alleges that Donahue failed to supervise, discipline, and investigate citizen complaints in violation of section 1983. (Compl. ¶¶ 75, 76, 84.) Donahue contends that the Complaint alleges no facts that suggest that he personally took any actions against Plaintiff, that he was in any supervisory position or had any authority over any other employees, or that he controlled County policies, customs, or practices. (Donahue's Mot. to Dismiss at 1:28-2:3.)

Claims against municipalities for failure to investigate complaints of wrongdoing against officers may be alleged as part of *Monell* liability, which requires a plaintiff to show that a "policy,

custom, or practice" of a municipality cause a constitutional violation. *See City of Oklahoma v. Tuttle*, 471 U.S. 808, 820 (1985). However, Plaintiff fails to cite any authority suggesting that Donahue–as an individual employee in the County of San Diego's Internal Affairs unit–could be liable under section 1983 for failure to investigate a deputy. Moreover, the parties stipulate to the dismissal of Plaintiff's failure to supervise and discipline claim against Donahue. (Opp'n, Doc. No. 16 at 3:4-5.) Therefore, the Court **GRANTS** Donahue's motion to dismiss in its entirety.

### III. CONCLUSION

For the reasons set forth above, the Court:

(1) **DENIES IN PART** the County's motion to dismiss as it pertains to Plaintiff's failure to supervise and discipline, failure to investigate, and *Monell* liability claims against the County;

(2) **GRANTS IN PART** the County's motion to dismiss Plaintiff's failure to properly train claim against the County;

(3) **DENIES IN PART** Barnett's motion to dismiss as it pertains to Plaintiff's failure to supervise and discipline and failure to investigate claims against Barnett;

(4) **GRANTS IN PART** Barnett's motion to dismiss Plaintiff's failure to properly train claim against Barnett;

(5) **GRANTS** Donahue's motion to dismiss Plaintiff's claims against Donahue; and

(6) The Court grants Plaintiff leave to amend his original Complaint, if he chooses to do so, no later than September 25, 2012. Plaintiff's amendments shall be consistent with this Order and shall not add previously-unalleged claims or parties without leave.

**IT IS SO ORDERED.**

DATED: September 17, 2012

Hon. Michael M. Anello
United States District Judge